**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**NORMAN JEWETT**                                                                    **PETITIONER**

**VS.**                             **CASE NO. 5:15CV00308 DPM/PSH**

**WENDY KELLEY, Director of the**
**Arkansas Department of Correction**                              **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge D. P. Marshall Jr.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

The Court has received an application for writ of habeas corpus pursuant to 28 U.S.C. §2254 from Norman Jewett ("Jewett"), who is currently in the custody of the Arkansas Department of Correction ("ADC").  In January 2014, Jewett entered no contest pleas in Pulaski County Circuit Court to three counts of possessing matter depicting sexually explicit conduct involving a child.  Jewett was sentenced to 10 years on each count, and the terms were imposed consecutively, resulting in a 30 year term of imprisonment.  In August 2014 Jewett filed a motion for reduction of sentence with the trial court.  When he received no decision on this motion, Jewett petitioned the Arkansas Supreme Court for an order directing the trial court to rule on the motion seeking a reduced sentence.  In April 2015 Jewett filed a motion with the trial court to run the three sentences

concurrently.  At the same time, Jewett filed a Rule 37 petition with the trial court, alleging his trial counsel coerced him into pleading no contest, failed to advise him of his right to a direct appeal, and deprived him of constitutional rights, including the right to a jury trial.  Respondent Wendy Kelley ("Kelley") indicates Jewett has received no rulings on his state court motions to reduce the sentence and to run the sentences concurrently.  Jewett's Rule 37 petition was recently denied on the merits by the trial court.

On September 30, 2015, Jewett filed his federal habeas corpus petition, alleging he was denied his right to a fair and impartial jury, denied his right to a direct appeal, denied due process when his trial attorney coerced him into pleading no contest, and received ineffective assistance of counsel.

**Statute of Limitations:**

Kelley contends that the statute of limitations bars consideration of these claims.  Section 101 of 28 U.S.C. 2244 (as amended) imposes a one year period of limitation on petitions for writ of habeas corpus:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Kelley contends that since judgment was entered based upon Jewett's no contest pleas on

2

January 30, 2014, the limitations period began to run thirty days thereafter, when his time for filing an appeal expired. *See Camacho v. Hobbs*, 774 F.3d 931 (8th Cir. 2015). Thus, the respondent urges the one-year limitation period began on March 1, 2014, and expired on March 1, 2015, more than six months prior to the filing of Jewett's federal habeas action.

In previous Orders, the Court has notified the parties of their opportunities to supplement the record and to explain why the petition should not be dismissed as time-barred. Docket entries nos. 9 & 14. The issues are now ripe for consideration.

*Time line:*

9-29-2013    Jewett, housed in the Pulaski County Jail, requests to visit the law library. This request is granted and he accesses the law library on October 3. Docket entry no. 17-6, pages 3 & 6.

10-6-2013    Jewett again requests the use of the law library. The request is granted, and he visits the law library on October 9. Docket entry no. 17-6, pages 3 & 7.

1-16-2014    Jewett pleads no contest to three counts of possessing matter depicting sexually explicit conduct involving a child. The prosecution nolle prossed twenty-two additional counts. The trial judge informed Jewett that the no contest pleas resulted in his waiver of his rights to a jury trial, to testify in his own defense, to compel witnesses, to have the jury determine his punishment if found guilty, and to appeal a verdict if found guilty. Jewett indicated he understood the implications of the plea. The prosecutor recited the factual basis for the charges, and Jewett's attorney agreed there was sufficient evidence to show the state could meet its burden of proof. Jewett entered the plea of no contest, and the state recommended a sentence of ten years on each count, to be served consecutively. Jewett's counsel stated the sentence was consistent with the written plea agreement negotiated in the case. Jewett was given credit for 713 days already served toward the sentence. Docket entry

3

no. 17-2.

| | |
|---|---|
| 1-30-2014 | Judgment of conviction is entered. |
| 7-3-2014 | Jewett is transferred from the Pulaski County Jail to the ADC. |
| 8-6-2014 | Jewett files a motion for reduction of sentence with the trial court. |
| 4-9-2015 | Jewett is informed by the Criminal Justice Coordinator of the Supreme Court of Arkansas that she received Jewett's petition for writ of mandamus with regard to the motion for reduction of sentence.  Jewett is informed that his mandamus petition could not be filed until he submitted a certified record and a filing fee of $165.00.  Docket entry no. 8-3. |
| 4-23-2015 | Jewett files a motion to run the sentences concurrently in the trial court. |
| 4-23-2015 | Jewett files a motion for Rule 37 relief with the trial court. |
| 5-13-2015 | Jewett files a motion/request for certified copies with the trial court. |
| 9-23-2015 | Jewett signs his federal habeas corpus petition. |
| 9-30-2015 | Jewett's federal habeas corpus petition is filed. |
| 3-8-2016 | The trial court denies Rule 37 relief, addressing the merits of his claims of ineffective assistance of counsel. |

*Jewett's Reasons Why Petition Should Not be Time-barred:* In his petition, Jewett explains he is unschooled in legal matters, has access to the prison law library for only six hours each week, that the Pulaski County Jail had no library for him, and the trial court was slow in filing his state court pleadings.  Further, in his subsequent explanatory pleading, Jewett asserts that he was unaware that his attorney had abandoned him and he was only able to proceed after he later gained access to a law library.  Jewett indicates that he used the ADC law library to discover his need to file motions and pleadings in state court and did so.  "[L]ater through Jewett's due diligence study of state and federal law," he learned of the one year federal limitations period.  Docket entry no. 13, page 2. Jewett concedes that his federal petition was "a few months" tardy.  Docket entry no. 13, page 3. He concludes that habeas courts have the power to look beyond procedural defaults and untimely

4

filings, and requests that this Court do so.  In asking the Court to overlook the untimely filing, Jewett is requesting that the limitations period be tolled, either based upon the statute itself or upon the doctrine of equitable tolling.

*Statutory Tolling:* The statute provides for the tolling of the limitations period while a "properly filed" postconviction petition is pending in state court.  28 U.S.C. § 2244(d)(2).  As reflected in the time line contained herein, Jewett filed a motion for reduction of sentence during the one year limitation period expiring on March 1, 2015.  The inquiry is whether this motion was properly filed, thus tolling the limitations period.  To be properly filed, the motion must be delivered to the appropriate court within the appropriate time period for filing.  *Artuz v. Bennett*, 531 U.S. 4 (2000).  The flaw in Jewett's case is the Arkansas statutory requirement that a motion to reduce a sentence must be filed within 90 days of the imposition of the sentence.  *See* Ark. Code Ann. § 16-90-111; *State v. King*, 2010 Ark. 428.  Jewett's motion was notarized on July 28 and filed on August 6, 2014.  Docket entry no. 8-2.  Both of these dates fall outside the 90 days following the imposition of Jewett's sentence.  Accordingly, the motion for reduction of sentence was not properly filed and did not toll the limitations period.

Jewett later, in April of 2015, filed a motion for the sentences to run concurrently and a motion for Rule 37 relief.  However, by the time of these filings the limitations period had elapsed on March 1, 2015.  Therefore, even if we assume that these state court filings were "properly filed" petitions as defined by 28 U.S.C. § 2244(2), "there was no federal limitations period remaining to toll."  *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001).

In summary, Jewett cannot avail himself of the statutory tolling provisions, which are activated only while a properly filed postconviction petition is pending in state court.  Therefore, the limitations period began on March 1, 2014, and ran without regard to the time during which Jewett sought relief in state court via his motions to reduce the sentence, have the sentence run concurrently, or for Rule 37 relief.

*Equitable Tolling:* Even if statutory provisions are inapplicable, the failure to file a timely

petition can be excused under other circumstances:

> Equitable tolling is appropriate where extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time, or where a defendant's conduct lulls the prisoner into inaction. *Id.* The doctrine applies "only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." *Flanders v. Graves,* 299 F.3d 974, 977 (8th Cir.2002). Equitable tolling is an "exceedingly narrow window of relief." *(Citation omitted).*

*Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

Here, Jewett points to his lack of access to a law library at the Pulaski County Jail following his conviction as the "extraordinary circumstance" which prevented him from filing a timely petition. For two reasons, this argument fails. First, it is apparent that Jewett had some access to the law library at the Pulaski County Jail both before and after his conviction. In fact, he actually utilized the law library twice in October 2013 prior to the entry of his no contest pleas in January of 2014. Second, even if the Pulaski County Jail somehow prevented Jewett from using the law library, Jewett concedes he has had access to the ADC's law library since his transfer there in July 2014. As a result, Jewett had approximately seven months after his transfer to the ADC in which to file a timely federal habeas corpus petition. The petition was actually filed in September of 2015. We find the circumstances surrounding Jewett's access to a law library were not extraordinary events making it impossible to file a timely petition. As a result, the limitations period was not equitably tolled.

Jewett's conclusory statement that he is unschooled in the law is also insufficient to toll the limitations period. He does not support this statement with any details to demonstrate how his educational limitations[1] made it impossible for him to file a timely federal habeas corpus petition.

We find neither statutory nor equitable tolling interrupted the limitations period after it began on March 1, 2014. Jewett's September 2015 federal habeas petition was untimely, and we recommend dismissal on that basis.

---

[1]When he entered his pleas of no contest, Jewett testified he completed eleven years of schooling.

**Procedural Default:**

Kelley also contends Jewett's claims are not properly before the Court due to his failure to adequately raise the grounds in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny.  In *Wainwright*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court:  that is, if he was aware of the ground, but failed to pursue it to a final determination.  The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure.  *See also, Clark v. Wood*, 823 F.2d 1241, 1250-51 (8th Cir. 1987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. 1987).  The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (1986), and *Murray v. Carrier*, 477 U.S. 478 (1986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause."  *Smith v. Murray*, 477 U.S. 533-34.  However, one can discern from these cases several circumstances in which cause might be found:  first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. 1 (1984); or third, if the litigant failed to receive the effective assistance of counsel.  *See Murray v. Carrier*, 477 U.S. at 488.  In addition, there is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause:  where a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.* at 496.

First, we note Jewett makes no claim of actual innocence, the path whereby a petitioner need not demonstrate cause for his procedural lapse.  He has, however, submitted a responsive pleading offering reasons for his failure to adequately raise his claims in state court.  See Docket Entry no.

7

11.  In this pleading, Jewett cites *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1913 (2013), as supportive of his claim, alleging that "ineffective assistance of counsel or no counsel at all . . . are the key elements for failure to raise claims. . ." Docket entry no. 11, page 1.  In other words, the absence of appointed counsel amounted to cause for his procedural default.

Rather than exploring the intricacies of the Arkansas procedural rules and considering the current state of the law as it relates to the recent cases of *Martinez* and *Trevino, supra,* we find it more appropriate and a better use of judicial resources to proceed to the merits of the claims advanced by Jewett.  We are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine.  Recent commentary points up the problems with the cause and prejudice standard:
> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . .  In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)).

**Merits:**

In his petition, Jewett styles his claims for relief as a denial of his right to a fair and impartial jury, a denial of his right to a direct appeal, a denial of  due process when his trial attorney coerced him into pleading no contest, and ineffective assistance of counsel.  A fair reading of the various claims reflects Jewett is, in all instances, challenging the performance of his trial attorney.

In order to prove ineffective assistance of counsel, petitioner must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985).  In the context of a guilty plea, Jewett must demonstrate

it is reasonably probable that, but for his attorney's errors, he would have not entered a guilty plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985).

In considering whether Jewett's counsel acted reasonably, we are aided by the plea statement and the transcript of the plea hearing. On January 16, 2014, Jewett and his attorney executed a plea statement. Jewett indicated in the statement he had completed 11 years of school, that his lawyer had advised him of his rights and possible defenses, that he had been promised nothing, that he had not been threatened, and that he was satisfied with his lawyer. Further, Jewett initialed that he understood he was giving up the following rights: to plead not guilty; to have the help of a lawyer through the trial and appeal; to a presumption of innocence; to make the state prove his guilt beyond a reasonable doubt; to see and hear those testify against him and to question them under oath; to choose to testify or not; to compel witnesses to attend and testify at the trial; to have a verdict where all jurors agree; to have the jurors set his punishment if found guilty; and to have an appeal and review by a higher court. Docket entry no. 8-5, page 6. The plea statement contained a separate page whereby the prosecution and defense submitted an Agreed Recommendation of Punishment. This agreement showed the parties agreed to Jewett receiving 30 years imprisonment for the three convictions, with credit received for 713 days of jail time. Counts 4 through 25 were nolle prossed, according to the agreement, which was signed by Jewett, his attorney, and the prosecutor. Docket entry no. 8-5, page 7.

On that same day, Jewett appeared before the trial judge and entered no contest pleas to the charges and acknowledged the Plea Statement and Agreed Recommendation of Punishment. Jewett told the judge he conferred with his attorney before signing the documents. The prosecutor recited that counts 4-25 would be nolle prossed, contingent upon the no contest plea to counts 1-3. The trial judge asked if Jewett understood the range of punishment (3-10 years and/or a $10,000 fine) for each of the 25 counts. Jewett indicated he did. The trial judge then listed the rights which Jewett was forfeiting by entering the no contest pleas. These rights were the same as those detailed in the Plea Statement. Jewett stated he understood the rights he was waiving. The prosecutor summarized the

9

facts which would be adduced to prove Jewett's guilt if a trial occurred[2]. The trial judge then asked Jewett's attorney, "Mr. Carder, do you believe that the State of Arkansas has enough evidence to meet its burden of proof on these charges?" He replied, "Yes, sir, they have the evidence." Docket entry no. 17-2, page 7. Jewett then entered his no contest pleas, indicating they were given of his own free will, without any threats, bribes, or anything else to coerce his decision.

As previously noted, to show ineffective assistance of counsel, a petitioner who entered pleas to the charges must demonstrate it is reasonably probable that, but for his attorney's errors, he would have not entered a guilty plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985). Although Jewett faults his attorney, he does not affirmatively state that he would have insisted on going to trial had his attorney acted in a different manner. Indeed, had Jewett proceeded to a jury trial and been convicted on all 25 counts, he was exposed to a potential term of imprisonment of 75 to 250 years. Given this exposure, it is understandable that Jewett entered his pleas to "avoid the perils" of a trial. *Thundershield v. Solem*, 565 F.2d 1018, 1028 (8th Cir. 1977). The claims advanced by Jewett (denial of a trial, denial of an appeal, and coercion by scare tactics) are conclusory and rebutted by the record which shows Jewett was aware of his rights and waived them knowingly. There is no merit to his claims.

**Conclusion:** For the foregoing reasons, we recommend the petition for writ of habeas corpus be dismissed and the relief requested be denied because the petition is time-barred. In the alternative, we recommend dismissal and denial of relief because all claims are without merit.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The

---

[2]Part of the prosecutor's recitation was Jewett's confession, after being informed of his *Miranda* rights, that he was responsible for downloading the photographs and videos of child pornography. Docket entry no. 17-2, page 7.

Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 11th day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE